126 N.J. Super. 288 (1974)
314 A.2d 86
JOSEPH F. LUTZ AND DOROTHY LUTZ, PLAINTIFFS,
v.
EDWARD SEMCER AND PAUL BOERGERSHAUSEN, DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided January 8, 1974.
*290 Messrs. Greenstone & Greenstone, attorney for plaintiffs.
Messrs. Braff, Litvak, Ertag, Wortmann & Harris, attorneys for defendants and Township of Millburn.
MICHELS, J.S.C.
Plaintiffs move before this court for leave to file a notice of late claim against the Township of Millburn pursuant to the provisions of N.J.S.A. 59:8-9, and to perfect their claim against defendant police officers.
Joseph F. Lutz (hereinafter referred to as plaintiff) instituted this action against defendant police officers of the Township of Millburn seeking damages for personal injuries allegedly sustained by him on January 27, 1973 when said defendants attempted to serve a traffic summons. His wife sues per quod. On January 27, 1973 plaintiff was driving his car in the Township of Millburn when he was stopped by defendants and served with a traffic summons for going through a stop sign, passing on the right and defective brake lights. Plaintiff alleges that while he was talking to defendants one of them closed the window of the police car on his finger and as a result he allegedly sustained permanent injuries to his finger and back.
On February 7, 1973 plaintiff appeared at the Millburn Municipal Court to answer the traffic summons. The municipal court record reveals that plaintiff pleaded not guilty *291 to the charges and informed the court that he had sustained an injury to his finger in the course of the issuance of the summons. Plaintiff stated to the court that he had retained counsel for the traffic violations, but that his attorney was unable to appear since the matter was being heard in the evening. Several days later plaintiff called the police surgeon of Millburn, informing him that he had injured his right hand and his back as a result of the foregoing incident and requested an examination. The police surgeon advised plaintiff to see his private physician.
After being hospitalized for lumbar disc surgery, which was performed on June 7, 1973, plaintiff consulted an attorney who informed him that he would present a formal notice of claim to the Township of Millburn. The notice of motion was filed on July 10, 1973. Plaintiff bases his request for leave to file the late notice on the ground that he was not aware of the enactment of the recent New Jersey Tort Claims Act which requires that actions against public entities be preceded by a claim filed within 90 days after accrual of the cause of action. See N.J.S.A. 59:8-8. Additionally, plaintiff offers as a ground for excusable neglect to file said claim that he was unaware of the seriousness of his injuries until his hospitalization in June 1973. He further bases his request for leave to file a late claim on the ground that his right to assert a claim for pain and suffering did not accrue until he incurred medical expenses greater than the amount of $1,000 under N.J.S.A. 59:9-2(d).
Millburn contends that plaintiff's delay in filing due to ignorance of the Tort Claims Act was not excusable, and that it will be sustantially prejudiced by the filing of a late notice of claim.
Presently, tort claims against public entities are governed by the New Jersey Tort Claims Act, N.J.S.A. 59:1-1 et seq., which became effective on July 1, 1972. N.J.S.A. 59:8-3 provides:
*292 No action shall be brought against a public entity under this act unless the claim upon which it is based shall have been presented in accordance with the procedure set forth in this chapter.
N.J.S.A. 59:8-8 provides for the time for presentation of claims as follows:
A claim relating to a cause of action for death or for injury to person or to property shall be presented as provided in this chapter not later than the ninetieth day after accrual of the cause of action. * * *
N.J.S.A. 59:8-9 provides with respect to a notice of late claim:
A claimant who fails to file notice of his claim within 90 days as provided in section 59:8-8 of this act, may, in the discretion of a judge of the superior court, be permitted to file such notice at any time within 1 year after the accrual of his claim provided that the public entity has not been substantially prejudiced thereby. Application to the court for permission to file a late notice of claim shall be made upon motion based upon affidavits showing sufficient reasons for his failure to file notice of claim within the period of time prescribed by section 59:8-8 of this act; provided that in no event may any suit against a public entity arising under this act be filed later than 2 years from the time of the accrual of the claim.
Thus, a plaintiff may in the discretion of the court be permitted to file a late notice of claim upon a showing of sufficient reason for the delay, provided that the defendant is not substantially prejudiced thereby. There does not appear to be any reported decision in New Jersey on this issue, and therefore the court has looked to the law of California for guidance in determining whether to grant plaintiff's motion for leave to file a late notice of claim. The Report of the Attorney General's Task Force on Sovereign Immunity published in May 1972 recommends that New Jersey enact a tort claims act following the basic statutory approach contained in the California Tort Claims Act of 1963.
The California cases hold uniformly that the determination of whether delay in filing is excusable rests in the discretion of the trial judge. Viles v. California, 66 Cal.2d 24, *293 56 Cal. Rptr. 666, 423 P.2d 818 (Sup. Ct. 1967); Martin v. City of Madera, 265 Cal. App.2d 76, 70 Cal. Rptr. 908 (D. Ct. App. 1968); Clark v. City of Compton, 22 Cal. App.3d 522, 99 Cal. Rptr. 613 (Ct. App. 1971); Black v. County of Los Angeles, 12 Cal. App.3d 670, 91 Cal. Rptr. 104 (Ct. App. 1970).
Plaintiff relies on the case of Viles v. California, supra, in support of his argument that because of excusable neglect he should now be permitted to file this late claim. In Viles an application was made by plaintiff for leave to present a claim against the state for the wrongful death of his wife after the statutory period of 100 days had expired. The applicable California statute, Cal. Gov. Code § 912, provided in pertinent part (at 820):
* * * (b) The superior court shall grant leave [to file a late claim] if the court finds that the application to the board [to file late] was made within a reasonable time not to exceed one year after the accrual of the cause of action and was denied * * * and that:
(1) The failure to present the claim was through mistake, inadvertence, surprise or excusable neglect unless the public entity * * * establishes that it would be prejudiced if leave to present the claim were granted; * * *.
The petition was denied, and plaintiff appealed to the California Supreme Court, which reversed the trial judge and granted relief to plaintiff based on his mistaken conclusion, after having been informed by insurance adjustors that he had a year in which to bring an action, that an action against the state could be brought in the same manner and within the same time limits as one against a private person. The court held that the mistake was excusable, not being an unreasonable misconception nor one that an average prudent person would not have formed under the circumstances.
However, in Tammen v. County of San Diego, 66 Cal.2d 468, 58 Cal. Rptr. 249, 426 P.2d 753 (1967), the California Supreme Court declined to reverse the trial court which had denied plaintiff the right to file a late claim based on, among *294 other things, the ground of excusable neglect, mistake, surprise or inadvertence. In that case plaintiff based its failure to file within the prescribed time limit on, among other things, the mistake of his counsel that the law regarding the presentation of claims to public entities was "uncertain." The court, in holding that the delay was not caused by a mistake of law constituting excusable neglect, stated:
* * * [I]t has been held that "ignorance of the law, at least where coupled with negligence in failing to look it up, will not justify a trial court in granting relief (citations) and such facts will certainly sustain a finding denying relief. [Citations].
"There is a somewhat tenuous line between a mistake of law and ignorance of law. The difference is probably only one of degree. In such cases all factors involved must be considered to determine whether relief should be granted or denied. While there is a strong public policy in favor of permitting a trial of a case on its merits, the determination as to whether a particular mistake of law warrants the granting of relief reposes largely in the discretion of the trial court. [Citation] In the instant case we are not interested in the question as to whether the trial court could have granted relief based on the claimed mistake of law, but, since the trial court denied relief, only in whether such holding was within its discretion." (Security Truck Line v. City of Monterey, 117 Cal. App.2d 441, 445 [3, 4], 256 P.2d 366, 369, 257 P.2d 755.)
In A & S Air Conditioning v. John J. Moore Co., 184 Cal. App.2d 617, 620 [7, 8] 7 Cal. Rptr. 592, 594, the court said: "However, a mistake as to law does not require relief from default as a matter of law. [Citation]. The issue of which mistakes of law constitute excusable neglect presents a fact question; the determining factors are the reasonableness of the misconception and the justifiability of lack of determination of the correct law." Excusable neglect is "that neglect which might have been the act of a reasonably prudent person under the same circumstances." (Alderman v. Jacobs, 128 Cal. App.2d 273, 276 [5], 274 P.2d 930, 932. [58 Cal. Rptr. at 254, 426 P.2d at 758]
The court rejected plaintiff's further assertion that the identity of the public entities responsible for the maintenance of the highway on which she was injured was not discoverable within the statutory period for filing the claim, holding that inquiry should have been made by plaintiff of the governing body of the city or the department of public *295 works as to the responsibility for the maintenance of the highway. It was noted by the court:
* * * It is not the purpose of remedial statutes to grant relief from defaults which are the result of inexcusable neglect of parties or their attorneys in the performance of the latter's obligation to their clients. (Hummel v. Hummel, 161 Cal. App.2d 272, 277 [4], 326 P.2d 542. The court therefore did not act arbitrarily in disbelieving that the identity of the public entities responsible for the condition of the state highway could not have been discovered until the indeterminate "month of December." [Id. at 255, 426 P.2d at 759-760]
In Martin v. City of Madera, 265 Cal. App.2d 76, 70 Cal. Rptr. 908 (D. Ct. App. 1968), plaintiff filed a petition for leave to present a late claim more than 11 months after he allegedly became ill as a result of drinking water from the defendant City of Madera's water supply, on the grounds that he was physically and mentally incapacitated during all of the 100-day statutory period for filing, and that the delay was due to mistake, inadvertence and excusable neglect. The trial judge denied the petition, and plaintiff appealed. The District Court of Appeals declined to reverse the trial court, holding that the evidence authorized the finding that plaintiff was not totally incapacitated, and that there was not a sufficient showing of excusable neglect. It was declared by the court, quoting Tammen v. County of San Diego, supra:
Mere ignorance of the law, at least where coupled with negligence in failing to look it up, is not sufficient cause to allow a petitioner to file a late claim against a public entity (Tammen v. County of San Diego, 66 Cal.2d 468, 476, 58 Cal. Rptr. 249, 426 P.2d 753; Security Truck Line v. City of Monterey, 117 Cal. App.2d 441, 445, 256 P.2d 366, 257 P.2d 755). Consequently, the fact alone that plaintiff did not know he was required to file a claim against the City of Madera within 100 days from August 13, 1965, in order to preserve his cause of action against the city was not, of itself, a sufficient reason for the trial judge to find excusable neglect under paragraph (c) (1) of section 946.6. [70 Cal. Rptr. at 911]
Bennett v. City of Los Angeles, 12 Cal. App.3d 116, 90 Cal. Rptr., 479, 482 (Ct. App. 1970), appears to be in point. *296 There, petitioners filed a notice of claim 19 days beyond the 100-day statutory period against the City of Los Angeles for the death of their son, who was killed when a cement wall, allegedly left in a hazardous condition by the city, fell and buried him. Petitioners asserted "`inadvertence and neglect, excusable in view of the fact that no attorney had been consulted until after the 100-day period had elapsed and due to the emotional state of mind of the claimants following the loss of their minor son' which disabled them from tending to their affairs `as they normally would.'" Additionally, petitioners alleged that a letter of condolence sent to them by the city misled them into believing that the city would voluntarily reimburse them for their loss. The petition was denied by the trial court which found that the only showing made by plaintiffs as to the reason for their delay was that they did not know that the filing of a claim was required until they consulted an attorney after the statutory period for filing had already expired. On appeal the court affirmed, holding that ignorance of the statute, when the result of the failure to consult an attorney until after the expiration of the statutory period for filing, did not entitle the claimants to relief.
Here, plaintiff, an anesthesiologist, was fully aware of the incident which gave rise to his injuries. Apparently the injuries were not so insignificant that plaintiff dismissed them from his mind, because he called the police surgeon to apprise him of the fact that he sustained some injury in this incident shortly after it had occurred, and pointed this out to the municipal court at the traffic hearing. Moreover, plaintiff even consulted an attorney with respect to the traffic violations with which he was charged. His failure, apparently, to consult an attorney to advise him of his rights against the municipality with respect to the injuries he allegedly sustained until after the statutory time period expired is certainly not sufficient reason under our statute to relieve him from the requirements of filing a timely notice *297 of claim against the municipality. Mere ignorance of the law is not a sufficient basis to excuse compliance with the requirements of this remedial statute.
Accordingly, the court is of the view that under the circumstances here present plaintiff has failed to establish sufficient reasons for his failure to file a notice within time to relieve him from the requirements of notice set forth in the New Jersey Tort Claims Act.
Furthermore, plaintiff's argument that his right to sue for pain and suffering did not accrue until he incurred medical expenses over $1,000 under N.J.S.A. 59:9-2(d) lends no support to his request for leave to file a late notice on the grounds of excusable neglect.
N.J.S.A. 59:9-2(d) provides in pertinent part:
No damages shall be awarded against a public entity or public employee for pain and suffering resulting from any injury; provided, however, that this limitation on the recovery of damages for pain and suffering shall not apply in cases of permanent loss of a bodily function, permanent disfigurement or dismemberment where the medical treatment expenses are in excess of $1,000.00. * * *
The section refers to the damages which are allowable in an action against a public entity or public employees. It has no bearing whatsoever on the time of the accrual of plaintiff's cause of action.
N.J.S.A. 59:8-1 provides that the notice provisions of the act do not affect the time of accrual of an action. It is well recognized that a cause of action accrues when facts exist which authorize one party to maintain an action against another. Marini v. Wanaque, 37 N.J. Super. 32 (App. Div. 1955); Band's Refuse Removal, Inc. v. Fair Lawn, 62 N.J. Super. 522 (App. Div. 1960). Any wrongful act for which the law provides a remedy resulting in injury to the person, though slight, gives right to institute an action therefor, and a cause of action accrues at that time. Tortorello v. Reinfeld, 6 N.J. 58, 65 (1950).
*298 In Rankin v. Sowinski, 119 N.J. Super. 393, 401 (App. Div. 1972), an action against a dentist for the alleged negligent extraction of an impacted wisdom tooth, plaintiff attempted to avoid the bar of the statute of limitations by asserting that she did not know the extent of her injury until she was examined by a subsequent dentist approximately four years after the injury was inflicted upon her. The Appellate Division, reversing the trial court, held that lack of knowledge of the extent of the injury did not toll the running of the statute. It was stated by the Court:
Here, within two or three days after the extraction, Mrs. Rankin knew the injury she sustained was caused by Dr. Sowinski. To say that she had to know or be informed that she had a cause of action before the statute would begin to run would be unreasonable. By way of analogy, the statute begins to run against a person struck by an automobile at the time he is hit. He knows he is injured and by whom and that he may have a claim for injuries against the driver of the automobile. It is not necessary for him to know that the driver was negligent in order for his cause of action to accrue. The same standard should apply here. The statute began to run against Mrs. Rankin in February or March 1964, when she knew she was injured and by whom. To accept the premise that the statute did not begin to run until she was advised by her attorney or Dr. Berlove in September 1968 that she had a cause of action for malpractice (which, incidentally, is not supported by the record) would be to disregard the basic policy of repose, which underlies the statute of limitations, thus extending the threat of litigation indefinitely.
Here, the accrual of plaintiff's cause of action coincided with his injury on January 27, 1973. At that time he was aware that he had been injured by defendant police officers. Any claim which he wished to assert for his injuries, however slight, was required to be filed within 90 days pursuant to N.J.S.A. 59:8-8.
Accordingly, plaintiff's motion for leave to file a late notice against the Township of Millburn is denied. In view of the holding of the court, it is unnecessary to decide the issue of whether the township would be substantially prejudiced by permitting a late filing of claim.
*299 Plaintiffs further contend that N.J.S.A. 59:8-8, providing for time for presentation of claims, refers to claims brought only against "public entities" and not to claims brought against public employees, and, thus, their action against defendant police officers is not barred. The statute is found in chapter 8 of the New Jersey Tort Claims Act, which is entitled "Claims Against Public Entities." In addition, N.J.S.A. 59:8-3 provides: "No action shall be brought against a public entity under this act unless the claim upon which it is based shall have been presented in accordance with the procedure set forth in this chapter." (Emphasis added). Moreover, no reference is made in said chapter to claims brought against public employees, nor is there any provision appearing in the entire Act providing for claims to be filed against public employees.
The term "public entity" is defined in N.J.S.A. 59: 1-3 as follows:
"Public entity" includes the State, and any county, municipality, district, public authority, public agency, and any other political subdivision or public body in the State.
An examination of the California Tort Claims Act reveals that in that state a claim does not have to be filed as a prerequisite to bringing a suit against a public employee. See Gov. Code Ann. § 950, which provides:
Except as otherwise provided in this chapter, a claim need not be presented as a prerequisite to the maintenance of an action against a public employee or former employee for injury resulting from an act or omission in the scope of his employment as a public employee.
and the Law Revision Commission Comment thereto providing:
Sections 950 to 950.8 cover all employees (officers, agents and employees) and both negligent and intentional torts.
The provisions of these sections make it unnecessary to present a claim against a public employee. The proposed sections will, however, bar an action against an employee if the action against the employing public entity is barred.
*300 N.J.S.A. 59:3-1(a), dealing with the liability of public employees, provides:
Except as otherwise provided by this act, a public employee is liable for injury caused by his act or omission to the same extent as a private person.
And, as noted in the 1972 Comment thereto:
This provision adopts existing case law in this State and throughout the country which has established the principle that public employees are liable for injury caused by their acts or omissions to the same extent as private persons unless granted immunity. See Florio v. Jersey City, 101 N.J.L. 535, 129 A. 470 (E. & A. 1925); Bedrock Foundations, Inc. v. Geo. H. Brewster and Son, Inc., 31 N.J. 124, 155 A.2d 536 (1959); Kisielewski v. State of New Jersey, 68 N.J. Super. 258, 172 A.2d 203 (App. Div. 1961); Czyzewski v. Schwartz, 110 N.J. Super. 255, 265 A.2d 173 (App. Div. 1970); Harris v. State, 118 N.J. Super. 384 (App. Div. 1972).
It is well established that statutes are to be construed with reference to the common law, and that a statute which is claimed to impose a duty or to establish a right not recognized at common law must be strictly construed to avoid such a result. Carlo v. The Okonite-Callender Cable Co., 3 N.J. 253, 265 (1949); O'Connell v. Forest Hill Field Club, 119 N.J. Super. 317, 320-321 (Law Div. 1972).
Accordingly, the filing of a claim within the 90-day time limit set forth in N.J.S.A. 59:8-8 is not a prerequisite to the maintenance of an action against a public employee, and this action may be maintained against the individual defendants.
An order should be submitted in accordance with the opinion of this court.