177 N.J. Super. 37 (1981)
424 A.2d 858
JOSEPHINE COPPOLA AND OTTAVIO COPPOLA, HER HUSBAND, PLAINTIFFS-APPELLANTS,
v.
STATE OF NEW JERSEY, STATE PAROLE BOARD OF THE STATE OF NEW JERSEY AND DEPARTMENT OF CORRECTIONS OF THE STATE OF NEW JERSEY, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Submitted December 23, 1980.
Decided January 12, 1981.
Before Judges MICHELS, ARD and FURMAN.
*38 Vernon, Whitmore & McGuire, attorneys for appellants (Roger J. Foss, on the brief).
John J. Degnan, Attorney General of New Jersey, attorney for respondents (Erminie L. Conley, Assistant Attorney General, of counsel; Jonathan L. Williams and John R. Tassini, Deputy Attorneys General, on the brief).
PER CURIAM.
Plaintiffs Josephine Coppola and Ottavio Coppola appeal from a summary judgment of the Law Division in favor of defendants State of New Jersey, State Parole Board of the State of New Jersey and Department of Corrections of the State of New Jersey dismissing their complaint for personal injuries because of the immunity provisions of the New Jersey Tort Claims Act. N.J.S.A. 59:1-1 et seq. (L. 1972, c. 45, § 59:1-1).
On December 21, 1977, plaintiff Josephine Coppola and her two year old son were abducted from the parking lot of the Freehold Mall in Freehold, New Jersey by Lawrence O. Adair. Plaintiff was taken by Adair to Howell Township where he sexually assaulted her. The assault occurred one day after Adair was released on parole from State Prison.
Plaintiff instituted this action against defendants seeking to recover damages for the personal injuries she sustained as a result of the assault. Her husband sued per quod. They contended that defendants were negligent and abused their discretion in releasing Adair on parole from State Prison after he had served only one year and ten months of a ten year State Prison sentence. The sentence had been imposed upon Adair after he pleaded guilty to armed robbery, rape and sodomy. The thrust of plaintiffs' argument is that defendants did not follow the statutory requirement when they paroled Adair, and that Adair's parole did not comply with the provisions of N.J.S.A. 30:4-123.12(a)(3), which mandates that a second offender not be eligible for parole until he completes one half of his maximum sentence less computation time for good behavior and diligent *39 performance of work assignments. On defendants' motion for summary judgment, Judge Selikoff in the Law Division held that N.J.S.A. 59:5-2(a) of the Tort Claims Act granted absolute immunity to defendants from liability for the injuries sustained plaintiffs and granted their motion. This appeal followed.
Tort claims against public entities, such as the State and its Parole Board and Department of Corrections, are governed by the provisions of the Tort Claims Act. The Act re-establishes an all-inclusive immunity from tort liability for such public entities absent specific provisions therein imposing liability upon them. Burg v. State, 147 N.J. Super. 316, 320 (App.Div. 1977), certif. den. 75 N.J. 11 (1977); English v. Newark Housing Authority, 138 N.J. Super. 425, 428-429 (App.Div. 1976); Keller v. County of Somerset, 137 N.J. Super. 1, 6 (App.Div. 1975). The legislative policy underlying the Act is set forth in N.J.S.A. 59:1-2, which states:
The Legislature recognizes the inherently unfair and inequitable results which occur in the strict application of the traditional doctrine of sovereign immunity. On the other hand the Legislature recognizes that while a private entrepreneur may readily be held liable for negligence within the chosen ambit of his activity, the area within which government has the power to act for the public good is almost without limit and therefore government should not have the duty to do everything that might be done. Consequently, it is hereby declared to be the public policy of this State that public entities shall only be liable for their negligence within the limitations of this act and in accordance with the fair and uniform principles established herein. All of the provisions of this act should be construed with a view to carry out the above legislative declaration. [Emphasis supplied].
In furtherance of the stated policy, N.J.S.A. 59:2-1 provides, in pertinent part, that:
a. Except as otherwise provided by this act, a public entity is not liable for an injury, whether such injury arises out of an act or omission of the public entity or a public employee or any other person.
Among the specific immunities granted public entities by the Act is immunity from liability for injuries resulting from the parole or release of a prisoner. N.J.S.A. 59:5-2 specifically provides, in pertinent part, that:
Neither a public entity nor a public employee is liable for:

*40 a. An injury resulting from the parole or release of a prisoner or from the terms and conditions of his parole or release or from the revocation of his parole or release. [Emphasis supplied].
Here, the theory of plaintiff's claim against defendants is that said defendants were negligent in releasing Adair on parole, and that such negligence was a proximate cause of her injuries. In the light of this claim, we have no hesitancy in concluding that the immunity granted by the clear and explicit language of N.J.S.A. 59:5-2(a) applies and insulates these defendants from any and all liability for the injuries plaintiff sustained.
The result we reach here finds support in decisions of courts interpreting the California Tort Claims Act of 1963 from which our Act was molded. See Burg v. State, supra, 147 N.J. Super. at 322. See also, Setrin v. Glassboro State College, 136 N.J. Super. 329, 334 (App.Div. 1975); Lutz v. Semcer., 126 N.J. Super. 288, 292 (Law Div. 1974).
Section 845.8 of the California Tort Claims Act is almost identical to N.J.S.A. 59:5-2 and, in pertinent part, provides that:
Neither a public entity nor a public employee is liable for:
a. Any injury resulting from determining whether to parole or release a prisoner or from determining the terms or conditions of his parole or release or from determining whether to revoke his parole or release.
[Emphasis supplied].
The California courts have recognized that there is a strong public policy in favor of allowing correctional personnel to make determinations of parole unfettered by any fear of tort liability and have repeatedly held that the process of parole is a subjective activity which requires an application of absolute immunity. See State v. Superior Court, for County of Orange, 37 Cal. App.3d 1023, 112 Cal. Rptr. 706 (D.Ct.App. 1974). See also, County of Sacramento v. Superior Court, 8 Cal.3d 479, 105 Cal. Rptr. 374, 503 P.2d 1382 (Sup.Ct. 1973).
Additionally, in Martinez v. California, 444 U.S. 277, 100 S.Ct. 553, 62 L.Ed.2d 481 (1980), reh. den. 445 U.S. 920, 100 S.Ct. 1285, 63 L.Ed.2d 606 (1980), wherein plaintiffs claimed that California state parole board officials were liable for damages resulting *41 from the death of their 15 year old daughter at the hands of a parolee, the United States Supreme Court specifically rejected the contention that the immunity provision of the California Tort Claims Act constituted a deprivation of constitutional rights to due process emphasizing that:
[The] inhibiting effect could impair the State's ability to implement a parole program.... Whether one agrees or disagrees with California's decision to provide absolute immunity for parole officials . .. one cannot deny that it rationally furthers a policy that reasonable lawmakers may favor.
[444 U.S. at 283, 100 S.Ct. 558, 62 L.Ed.2d 488 (1980); emphasis supplied].
The need to free the exercise of judgment in the parole adjudication context from fear of future lawsuits is apparent. Parole adjudications are highly predictive and subjective. As a result, there is no ideal, error free way to render a parole decision and the process of necessity is to a large degree experimental. Consequently, the Legislature has, for good reason, established the broad immunity in N.J.S.A. 59:5-2(a) so that parole determinations can be made without fear of future liability.
Additionally, since we hold to the view that the immunity conferred by N.J.S.A. 59:5-2(a) is total and absolute, we need not consider whether Adair's release or parole was proper. However, we deem it appropriate to observe that the limitations on granting parole set forth in N.J.S.A. 30:4-123.12 (repealed by L. 1979, c. 441), which plaintiff contends were not followed in Adair's release, apply only to a fixed maximum and minimum term in a State penal or correctional institution. N.J.S.A. 30:4-123.5 (repealed by L. 1979, c. 441). Here, Adair had been sentenced to concurrent indeterminate terms with a ten year maximum for armed robbery, rape and sodomy. Since he was sentenced to concurrent indeterminate terms, he would have been eligible for parole at any time determined by the Board of Managers of the Youth Correctional Institution Complex. See N.J.S.A. 30:4-106 (repealed by L. 1979, c. 441, § 27); N.J.S.A. 30:4-1.1(n); N.J.S.A. 30:4-147 and N.J.S.A. 30:4-148. See also State v. Prewitt, 127 N.J. Super. 560, 567 (App.Div. 1974).
*42 We have carefully considered the remaining arguments advanced by plaintiffs and are not persuaded that any of them requires that we reach a different conclusion.
Accordingly, the summary judgment in favor of defendants is affirmed.