677 A.2d 285

JESSIE COLLINS, PLAINTIFF, v. UNION COUNTY JAIL, UNION COUNTY BOARD OF CHOSEN FREEHOLDERS, JAIL DI-RECTOR WARREN MACCARELLI, CORRECTIONS OFFICER GAYLAND ROBINSON, SUPERVISING SERGEANT JOHN DOE 2, CORRECTION OFFICERS JOHN DOE 3 THROUGH 5, JO-SEPH SALEY, OFFICER OF INTERNAL AFFAIRS, HAROLD GIBSON, DEPUTY COUNTY MANAGER AND DIRECTOR OF DEPARTMENT OF PUBLIC SAFETY, DEFENDANTS.

Superior Court of New Jersey
Law Division Union County

October 6, 1995.

*Edwin McCreedy* for plaintiff (*McCreedy & Cox,* attorneys)

*Robert Doherty* Assistant County Counsel for defendant, (*James F. Keefe,* County Counsel, Union County).

MENZA, J.S.C.

This opinion is an elaboration of one rendered by the court at the trial of this matter.

■ This case involves the novel question of whether a particularly horrid incident resulting in a permanent psychological injury, without physical injury, is enough to satisfy the verbal threshold requirement of the Tort Claims Act.  (*N.J.S.A.* 59:9–2(d))

■ Plaintiff was raped by a Corrections Officer while an inmate in the Union County Jail and has brought suit against the County of Union and other County employees alleging that their negligence contributed to the incident.  The plaintiff contends that as a result of the occurrence, he suffers a post-traumatic stress disorder for which he has received treatment from a licensed psychologist and which the doctor has concluded is permanent. The symptoms which form the basis for the diagnosis are set forth in the doctor's report:

> Mr. Collins first came to our office on 10/17/91 presenting difficulties with anxiety and stress.  These difficulties seemed to be related to being raped while incarcerated at the Union County facility by a Corrections Officer.  Mr. Collins was experiencing recurrent flashbacks to the incident, usually waking up in the middle of the night with profuse sweating, palpitations and an overall sense of fear. According to this patient, his social life has been seriously restricted.  At the time of interview, he claimed that he has been staying home baby sitting for his sister, and watching television.

Defendants moved at trial to dismiss the plaintiff's claim contending that plaintiff has failed to meet the verbal threshold of the Tort Claims Act.

■ The pertinent provision of that Act (*N.J.S.A.* 59:9–2(d)) provides:

> No damages shall be awarded against a public entity or public employee for pain and suffering resulting from any injury; provided, however, that this limitation on the recovery for damages for pain and suffering shall not apply in cases of permanent loss of a bodily function, permanent disfigurement or dismemberment where the medical treatment expenses are in excess of one $1,000.00.

### The 1972 Task Force Comment to the statute states:

> The limitation on the recovery of damages in subparagraph (d) reflects the policy judgment that in view of the economic burdens presently facing public entities a claimant should not be reimbursed for non-objective types of damages, such as pain and suffering, except in aggravating circumstances—cases involving permanent loss of a bodily function, permanent disfigurement or dismemberment where the medical treatment expenses are in excess of $1,000.00.  The limitation that pain

and suffering may only be awarded when medical expenses exceed $1,000.00 insures that such damages will not be awarded unless the loss is substantial.

Case law which has interpreted the statute makes it clear that injuries involving emotional distress are non-objective types of damages, constituting pain and suffering, and thus noncompensable under the Act.

In *Ayers v. Jackson Tp.* 106 *N.J.* 557, 525 *A.*2d 287 (1987), the court denied damages to the plaintiffs for emotional distress resulting from possible exposure to toxic materials. In doing so, the Court stated:

[t]he] subjective symptoms such as depression, fear and anxiety ... constitute "pain and suffering" for the purposes of the Tort Claims Act ...

... [T]he legislature has expressly determined that the pain and suffering occasioned by their emotional distress is not compensable ...

*Id.* at 577, 525 *A.*2d 287.

In *Srebnik v. State*, 245 *N.J.Super.* 344, 585 *A.*2d 950 (App.Div. 1991), the Court held that a damage claim for a chronic and permanent post-traumatic stress disorder, unaccompanied by a physical injury, is not compensable under the Tort Claims Act.

The Court commenting on *Ayers* stated:

In light of the *Ayers* holding that emotional distress constitutes "pain and suffering," plaintiff's claim here is barred unless she suffered "permanent loss of a bodily function, permanent disfigurement or dismemberment ..."

*Id.* at 349 [585 *A.*2d 950].

[t]he term "permanent loss of a bodily function" must be read in conjunction with its associated words "permanent disfigurement or dismemberment." These later words unquestionably pertain to injury to the physical components of the body, not the injured party's psyche. We must therefore assume that the Legislature intended the same meaning when it used "permanent loss of a bodily function." Moreover, while "injury" is defined by the Act, the terms "bodily," "bodily injury," or "bodily function" are not. Consequently, we give the terms their ordinary and well understood meaning. "Bodily" is defined as "[p]ertaining to or concerning the body; of or belonging to the body or the physical constitution; not mental but corporeal." *Black's Law Dictionary* 159 (5th ed. 1979). "Bodily condition" is defined as the "[s]tatus of human body at a given point in time as contrasted with state of mind."

*Id.* 245 *N.J.Super.* at 351 [585 *A.*2d 950] (citations omitted).

We are satisfied that damages for emotional distress are recoverable, ... if they result from a permanent debilitation or disfiguring physical injury, ... [and] if they result in permanent physical sequelae such as disabling tremors, paralysis or loss

of eyesight; that is, a "permanent loss of bodily function." Damages resulting from subjective symptoms of depression and anxiety, without the requisite indicia of permanent physical infirmity, are not recoverable under the Act.

*Id.* at 351 [585 *A.*2d 950].

In *Randall v. State,* 277 *N.J.Super.* 192, 649 *A.*2d 408 (App.Div. 1994) a case involving a strip search of the plaintiff who was an inmate in a correctional facility, the court held that plaintiff's claim for emotional distress, manifested in nervous tremors, diarrhea, chronic stomach pains and severe hair loss, was insufficient as objective evidence sufficient to meet the Tort Claims Act threshold.

Citing *Srebnik,* the court stated:

"Emotional distress is the kind of "pain and suffering" that would not be recoverable in this case unless it caused a "permanent loss of a bodily function."

*Id.* at 196 [649 *A.*2d 408].

[W]e conclude that not only must there be verifiable objective manifestations of emotional distress, but those manifestations must be verified "by physical examination and observation" of a physician. Dr. Fox did not claim in his report that he verified plaintiff's complaints by examination or observation. He simply accepted her complaints as true. Particularly in the area of a patients's state of mind, an expert's opinion is not admissible if it merely parrots what is said by the patient.

*Id.* at 197–198 [649 *A.*2d 408].

There are no proofs in this case that plaintiff suffered any physical injury from the assault, which resulted in his emotional distress. Nor are there proofs that his post-traumatic stress disorder symptoms manifested themselves in a physical injury.

The only evidence of injury is the psychologist's recitation in his report of plaintiff's subjective complaints which is insufficient as a basis for damages under the Act. Neither does the permanency of plaintiff's post-traumatic stress disorder provide a basis for damages.

As noted in *Srebnik,*

"Neither the Act nor *Ayers* equates "permanent" emotional injury with "permanent" loss of a bodily function. As we read *Ayers,* it interprets the Act as barring claims involving intangible "subjective symptoms" associated with personal injuries irrespective of the severity or duration of the symptoms, absent the aggravating circumstances enumerated in the Act ..."

245 *N.J.Super.* at 350 [585 *A.*2d 950].

■ Plaintiff argues, however, that even if he did not sustain a physical injury, the nature of the act, i.e. the brutality of it, constitutes an aggravating circumstance which satisfies the criteria of the statute and justifies damages for pain and suffering. Plaintiff rests this argument on the commentary's use of the phrase "aggravating circumstances" and on the Law Division case of *A.C.R. by L.R. v. Vara,* 264 *N.J.Super.* 565, 625 *A.*2d 41 (Law Div.1992), which held that the sexual molestation of a child is presumed to result in physical injury compensable under the Tort Claims Act even when the injury only manifests itself in psychological problems.

In *A.C.R.* the court concluded:

> This court finds there is a presumption that the sexual molestation of a child results in serious physical as well as mental injury.

*Id.* at 571 [625 *A.*2d 41].

> From this presumption it is fair to conclude that the requirements of *N.J.S.A.* 59:9–2(d) have been met as there is permanent loss of bodily function and or permanent disfigurement when a child is sexually molested. This is true even when the injury only manifests itself in psychological symptoms.

*Id.* at 571–572 [625 *A.*2d 41].

In reaching this conclusion the court relied on various insurance coverage cases holding that a sexual assault on a child is inherently injurious and causes physical harm. However, it did not set forth the rational for its holding, thus causing one to speculate as to whether the court meant that a child does, in actuality, sustain physical injury when sexually molested (as would be the case with a carnal knowledge), or that it meant that a child sustains a physical injury by virtue of the horrid nature of the act. In any event, although the *A.C.R.* case is to be given deference, it is not controlling on this court, particularly where, as here, the plaintiff is an adult.

Plaintiff's reliance on the language in the Task Force Comment is also lacking.

The Task Force Comment reads:

[E]xcept in aggravating circumstances—cases involving permanent loss of a bodily function, permanent disfigurement or dismemberment where the medical treatment expenses are in excess of $1,000.00.

The plain language of the statute clearly limits "aggravating circumstances" warranting pain and suffering damages to those cases involving permanent loss of a bodily function or permanent disfigurement or dismemberment.[1] It neither explicitly nor implicitly, permits damages for pain and suffering for horrendous acts if they are unaccompanied by a physical injury.

This court concludes therefore that the circumstances of the occurrence of an injury are irrelevant in determining whether an award of pain and suffering is warranted. The phrase "aggravating circumstances" used in the 1972 Report of the Attorney General Task Force on Sovereign Immunity refers to physical injuries. It does not refer to the manner in which the injury occurred.

■ Plaintiff's psychologist has found that plaintiff's post-traumatic stress disorder is permanent. It is to be noted that the Tort Claims Act may bar a claim for pain and suffering and still permit one for permanency. See *Peterson v. Edison Tp. Bd. of Ed.* 137 *N.J.Super.* 566, 350 *A.*2d 82 (App.Div.1975). However, in this case it would be illogical to permit an award based on the permanency of a post-traumatic stress disorder condition, the symptoms of which are themselves subjective and non-compensable. Put another way, if emotional distress claims and the symptoms which form the basis of those claims are determined to be pain and suffering for which a plaintiff may not be awarded damages, how then can there be an award of damages for permanency relating to

---

[1] The dash in the commentary is obviously used to describe what is meant by the phrase "aggravating circumstances." In the Associated Press Style Book and Libel Manual, the author states:

> When a phrase that otherwise would be set off by commas contains a series of words that must be separated by commas, use dashes to set off the full phrase. Associated Press, Stylebook and Libel Manual 269 (Christopher W. French ed., rev. ed. 1987).

the emotional claim, which manifests itself as pain and suffering? The answer of course is that it cannot be.

The medical bills relate to pain and suffering and are similarly non-compensable.

Defendant's motion to dismiss is granted.